IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NORMAN BAMBER, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PRIME HEALTHCARE KANSAS CITY - ) | |
| PHYSICIAN'S SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | Case No. 17-9014-MC-W-BP |
| ) | |
| OLATHE MEDICAL CENTER, INC., ) | |
| OLATHE HEALTH PHYSICIANS, INC., ) | |
| and MIAMI COUNTY MEDICAL ) | |
| CENTER, INC., ) | |

## ORDER AND OPINION GRANTING MOTION TO QUASH SUBPOENA[1]

This matter arises from a lawsuit filed by Dr. Norman Bamber ("Bamber") against his former employer, Prime Healthcare Kansas City ("Prime"). That case bears case number 17-0229-CV-W-HFS and has been assigned to the Honorable Howard Sachs. In the course of that lawsuit, Prime issued a subpoena to a third-party, Olathe Medical Center ("OMC").[2] OMC is Bamber's present employer;[3] it filed a Motion to Quash in the District of Kansas, which

---

[1] Prime's Motion for Leave to File Surreply, (Doc. 12), is **GRANTED**, and the Surreply attached to the motion, (Doc. 12-1), is deemed to have been filed.

[2] Prime's subpoena was directed to OMC, but it required OMC to search not only its own records but also the records of "any corporation or other entity over which Olathe Medical Center exercises some control or access to information or documents." (Doc. 2-1, p. 4.) Thus, the Motion to Quash is filed jointly by OMC, Olathe Health Physicians, and Miami County Medical Center. The Court will refer to OMC, but its analysis and ruling applies to all three movants.

[3] OMC indicates that Bamber began working for OMC approximately five months after he was terminated by Prime. (Doc. 11, p. 3.)

transferred the case to this District because the underlying suit is pending here.[4]  As discussed more fully below, the Court concludes the Motion to Quash should be **GRANTED**.

## I. BACKGROUND

The Petition Plaintiff filed in state court (hereafter "the Complaint") is his operative pleading.  Generally, it alleges that in February 2015 he entered an employment contract with Carondelet Physician Services.  (Doc. 9-6, ¶ 8.)  Shortly thereafter, Prime acquired Carondelet and the employment agreement was assigned to Prime.  (Doc. 9-6, ¶¶ 42, 47.)  The employment agreement had a five year term.  (Doc. 9-6, ¶ 13.)  However, in November 2016 – for reasons that are not relevant to the issues presently before the Court – Prime advised Bamber that it considered him to be in breach of the agreement.  (Doc. 9-6, ¶ 84.)  Based on that determination and Prime's belief that Bamber failed to cure the breach, Prime terminated the employment agreement in December 2016.  (Doc. 9-6, ¶¶ 84-85, 89.)

The Complaint includes allegations about events after the termination, and these are important to Prime's justification for the subpoena to OMC.  Bamber's Complaint alleges that after the termination he had no opportunity to arrange for continued patient care.  (Doc. 9-6, ¶ 90.)  He later learned that patients who called after the termination were provided "false or misleading information about Dr. Bamber's practice" that "left [the patients] unable to contact Dr. Bamber to obtain medical treatment and consultations."  (Doc. 9-6, ¶ 92.)  The Complaint also alleges that Prime has made no provision for his former patients' care.  (Doc. 9-6, ¶¶ 93-96.) As a result of these failings, Bamber's ability to generate referrals and care for his patients was limited, causing "substantial harm to Dr. Bamber's medical practice and to his economic interests," (Doc. 9-6, ¶ 97), and leaving "Dr. Bamber without any of the infrastructure necessary

---

[4] This proceeding was transferred to Judge Sachs, (Doc. 7), but Judge Sachs has a conflict of interest that required him to recuse himself from considering OMC's motion.  (Doc. 8.)

to preserve his practice." (Doc. 9-6, ¶¶ 98; *see also* Doc. 9-6, ¶ 101.) The Complaint presents three causes of action. Count I alleges breach of contract, Count II alleges "Breach of Contract – Special Damages," and Count III alleges "Tortious Interference – Unfair Competition." Count III, which provides Prime's justification for the subpoena, claims that Prime interfered with Bamber's "existing and prospective patient relationships" by failing to provide accurate information to patients about how Bamber could be contacted. (Doc. 9-6, ¶¶ 113, 115.)

The parties conducted their Rule 26(f) conference on May 4, 2017, which made that the earliest date formal discovery commenced absent agreement of the parties. *See* Fed. R. Civ. P. 26(d). The subpoena at issue is dated July 31, and it was served on OMC on August 3. The subpoena requires OMC to search all email accounts used by Plaintiff for certain keywords. In addition, the subpoena requires OMC to produce all documents and electronically stored information ("ESI") that will identify all of Plaintiff's patients as well as all documents and ESI related to Plaintiff's "transitioning [of] his practice," "patient logs," "encounter lists," "surgeon statistics," and "surgical case lists." (Doc. 2-1, p. 5.)

OMC raised several arguments, but the Court finds it necessary to consider only one. OMC argues that the subpoena imposes a burden that is greater than necessary given the need for the information sought. Prime argues that the information is necessary in light of Bamber's pleadings. As discussed below, the Court agrees with OMC.

## II. DISCUSSION

A subpoena must be quashed or modified if it imposes an undue burden on the party being required to respond. Fed. R. Civ. P. 45(d)(3)(iv). Part of evaluating the burden (and the appropriate remedy) requires consideration of the proper scope of discovery as set forth in Rule 26. Rule 26(b)(1) allows for discovery "that is relevant to any party's claim or defense and

proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The Court is not persuaded that the broad discovery Prime seeks from third-parties is presently justified.

Prime generally argues that the information sought is relevant to Bamber's claim of tortious interference. More specifically, Prime contends that the subpoena issued to OMC will help establish which patients Bamber lost (and why), whether any patients or medical providers had difficulty contacting Bamber during the transition period, and the status of his medical practice. (Doc. 9, p. 6.) However, the information sought from OMC is overly broad in light of these justifications. For instance, among the keywords to be used when searching emails is "Bamber," which virtually assures that all emails to and from Plaintiff will be found in the search. A request for the names of Plaintiff's patients, patient logs, and surgical case lists is also broader than necessary to satisfy Prime's stated need for information.

The Court is also mindful that this is Prime's second subpoena issued to OMC. The first subpoena sought, *inter alia*, all communications related to Plaintiff's application for employment, Plaintiff's personnel file, compensation, billing entries, and invoices, and all documents and ESI "related to all start-up expenses of Plaintiff in 2016 and/or 2017." (Doc. 2-2, p. 7.) There is some overlap between the two subpoenas, but the first subpoena was narrower and appropriately targeted to Prime's stated needs. This is significant because OMC represents (and Prime does not deny) that it provided all the information it had that was responsive to the first subpoena, (Doc. 2, pp. 3-4), and Prime does not justify the need for the additional information it now seeks.

4

Finally, Prime should minimize the burden to third parties by directing discovery requests to Bamber; then, depending on the answers he provides, a narrower, more focused subpoena to OMC may be justified. For instance, as the plaintiff in the underlying suit, Bamber can (and should) be required to identify the patients he believes were unable to contact him or who stopped seeking treatment from him. Bamber is also already obligated to identify all evidence documenting his diminished earnings and other damages. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). Bamber's responses may justify a narrower request for information from OMC (for instance, a request for information about the patients Bamber identifies), but at the present Prime's request for information from OMC is overly broad in light of the needs of the case, the availability of other (and better) avenues for obtaining the information, and OMC's status as a non-party.

### III. CONCLUSION

OMC's Motion to Quash is **GRANTED.**

IT IS SO ORDERED.

DATE: September 21, 2017

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

5